**IN THE UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF TEXAS**

**SHERMAN DIVISION**

| | |
|---|---|
| IN RE: | **Case No.:**  24-40243 |
| **Stenson Landscape & Irrigation, Inc.**<br>82-3662888<br>PO Box 955<br>Lake Dallas, TX 75065 | **Chapter:**  11 |
| **Debtor.** | |

## DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION
### [DATED JULY 15, 2024]

Pursuant to section 1121(a) of the Bankruptcy Code, **Stenson Landscape & Irrigation, Inc.**, the debtor and debtor-in-possession in this Case[1] hereby proposes this Plan of Reorganization

### INTRODUCTION

The purpose of this Plan is to provide the details of the Debtor's proposed reorganization and proposed distributions of money and/or property to their Creditors After the Plan has been confirmed, the Bankruptcy Court will retain jurisdiction to determine the allowance of all Claims and to effectuate and enforce the terms of this Plan.

### BACKGROUND

### Business History and Operations

The Debtor is a small landscape business that faced a decline in revenue coupled with a large EIDL Loan from the SBA taken out in order to stem COVID related losses.  Those events prompted the filing of this bankruptcy case with the hopes being able to resolve its cash flow issues.

### CONDITIONS TO CONFIRMATION

The Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Plan as **Exhibit "A"**.

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.  The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. Attached as **Exhibit "B"** are projections of Debtor's revenue and expenses.

---

[1] Capitalized terms used herein shall have the meaning ascribed them in Article VIII of this Plan.

# ARTICLE 1:   PLAN SUMMARY

1.1.    **Reorganization**:  The Plan provides for a reorganization and restructuring of the Debtor's financial obligations.

1.2.    **Distribution**:  The Plan provides for a distribution to Creditors in accordance with the terms of the Plan from the Debtor over the course of **five (5)** years from the Debtor's continued business operations.

1.3.    **Classes**:  The Plan provides for:

|  |  |
|---|---|
| **1** | Class of priority Claims; |
| **20** | Classes of secured Claims; |
| **1** | Class of unsecured Claims; and |
| **1** | Class of equity security holders. |

Unsecured Creditors holding Allowed Claims will receive distributions paid quarterly over five (5) years in the following approximate amounts:

| **DEBTOR** | **PROJECTED QUARTERLY DISTRIBUTION** |
|---|---|
| **Stenson Landscape & Irrigation, Inc.** | $15,000.00 |

This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 4 of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE 2:   CLASSIFICATION OF CLAIMS AND INTERESTS

| | | | |
|---|---|---|---|
| 2.1. | **Class 1A** | ................. | The claim of *Ad Valorem* Tax Authorities to the extent Allowed as Secured Claims under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.2. | **Class 1B** | ................. | The SBA Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.3. | **Class 1C** | ................. | The Ally 5769 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.4. | **Class 1D** | ................. | The Ally 4892 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.5. | **Class 1E** | ................. | The Ally 8959 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.6. | **Class 1F** | ................. | The Ally 5717 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.7. | **Class 1G** | ................. | The Ally 4857 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.8. | **Class 1H** | ................. | The Amur Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.9. | **Class 1I** | ................. | The Blue Bridge 5023 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |

| 2.10. | **Class 1J** | ................. | The FMC 0381 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.11. | **Class 1K** | ................. | The FMC 3203 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.12. | **Class 1L** | ................. | The FMC 2635 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.13. | **Class 1M** | ................. | The FMC 5220 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.14. | **Class 1N** | ................. | The Mitsubishi Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.15. | **Class 1O** | ................. | The Newlane Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.16. | **Class 1P** | ................. | The PNC 9790 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.17. | **Class 1Q** | ................. | The PNC 9314 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.18. | **Class 1R** | ................. | The PNC 0203 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.19. | **Class 1S** | ................. | The Simmons Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.20. | **Class 1T** | ................. | The Blue Bridge 4469 Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.21. | **Class 2** | ................. | All Allowed Claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). |
| 2.22. | **Class 3** | ................. | All non-priority unsecured Claims Allowed under § 502 of the Bankruptcy Code. |
| 2.23. | **Class 4** | ................. | Equity Interests of the Debtor |

### ARTICLE 3:   TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIOIRTY TAX CLAIMS AND QUARTERLY AND COURT FEES

| 3.1. | **Unclassified Claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.2. | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan by the Debtor, but only to the extent of each such Debtor's liability, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor as set forth in the following sections 3.3 through and including 3.4 or post-confirmation. **NOTE: This treatment is materially altered in the event of confirmation pursuant to § 1191(b) as to claims arising under §§ 507(a)(2) and (3) as noted in section 3.6 of this Plan.** |
| 3.3. | **Priority Tax Claims** | Each holder of an Allowed Priority Tax Claim against the Debtor shall receive on the Effective Date, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, at the election of |

the liable Debtor, either: (i) Cash payment in the amount of such holder's Allowed Priority Tax Claim; (ii) deferred Cash payments over a period not to exceed five (5) years, from the Petition Date of a value as of the Effective Date, equal to the Allowed amount of such Claim; or (iii) such other terms as may be agreed upon by such holder and the liable Debtor. The rate of interest to be paid on Allowed Priority Tax Claims that are paid out over five (5) years shall be equal to the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S.C. § 6621(a)) as of the Effective Date (the underpayment rate is currently 8.0%).

Default Provision - IRS. Notwithstanding any other provision or term of this Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its claims, including any administrative claim (the IRS Claim):

(1)    Notwithstanding any other provision in the Plan, if the Debtor, the Reorganized Debtor, or any successor in interest fails to pay when due any payment required to be made on federal taxes, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan, the Confirmation Order, or the Internal Revenue Code (26 U.S.C.), or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the IRS shall be entitled to give the Debtor, the Reorganized Debtor and/or any successor in interest and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply to the IRS:

(A)  The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and collection as provided under the Internal Revenue Code;

(B)  The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or in the Confirmation Order shall, with regard to the IRS only, lift or terminate without further notice or hearing by the Court, and the entire imposed liability owed to the IRS, together with any unpaid current liabilities, may become due and payable immediately; and

(C)  The IRS shall have the right to proceed to collect from the Debtor, the Reorganized Debtor or any successor in interest any

of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(2)  If the IRS declares the Debtor, the Reorganized Debtor, or any successor in interest to be in default of the Debtor's, the Reorganized Debtor's and/or any successor in interest's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor, Reorganized Debtor, and/or any successor in interest.  Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States or its agency the IRS of the right to declare that the Debtor, Reorganized Debtor, and/or any successor in interest is in default.

(3)  If full payment is not made within fourteen (14) days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code.  The IRS shall only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default the IRS shall be entitled to proceed as set out in paragraphs (A), (B), and/or (C) herein above without further notice to the Debtor, the Reorganized Debtor, or any successor in interest, or its counsel.  The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(4)  The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor, the Reorganized Debtor, and/or any successor in interest to the IRS.  The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor, the Reorganized Debtor and/or any successor in interest to the Internal Revenue Service.

(5)  The term "any payment required to be made on federal taxes," as used herein above, is defined as:  any payment or deposit required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full.  The term "any required tax return," as used herein above, is defined as:  any tax return or report required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any

successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full.

IRS Priority Tax Claim.  Estimated at $614,813.28 (Payable at $13,500 per month).

Address for Payment.  Until further notice, all payments due the Comptroller shall be sent to the following address:  **Internal Revenue Service**, 1100 Commerce St, M/S 5026 DAL, Dallas, TX, 75242.

### COMPTROLLER OF PUBLIC ACCOUNTS AND TWC

Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Comptroller of Public Accounts (the "Comptroller") and the Texas Workforce Commission (the "TWC"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Comptroller or the TWC in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Comptroller or the TWC to pursue any non-debtor third parties for tax debts or claims, and the Comptroller and TWC specifically opt out of any third party releases, if any; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's or the TWC's administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Comptroller or the TWC, the interest rate shall be the statutory interest rate, currently 9.5% per annum; and (5) nothing provided in the Plan or Confirmation Order impacts the governmental claims bar date, and Comptroller and TWC may amend their claims at any point.

The Comptroller and TWC shall not be required to file any proof of claim, motion, or request for payment to be paid for any administrative claims. The Comptroller and TWC shall not be required to file any proof of claim, motion, or request for payment to be paid for any obligations that arise or have arisen in the ordinary course of the Debtors' business, including all post-petition taxes incurred by the Debtors and/or Reorganized Debtors after the Petition Date. All post-petition taxes owed to the Comptroller and TWC shall be paid in full with applicable interest on or before the Effective Date, or as otherwise agreed by the Comptroller and/or TWC, whichever is the respective agency for such post-petition taxes. If any post-petition taxes or Administrative Claims owed to the Comptroller or TWC are not due on the Effective Date, then such post-petition taxes or

Administrative Claim shall be paid in the ordinary course of business in accordance with applicable law.

All priority tax claims owed to the Texas Comptroller and/or the TWC shall be paid in full either (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Debtors' bankruptcy petition date, with the first payment due on the Effective Date and every month thereafter on that same day of the month; or (3) as otherwise agreed to by the Comptroller and/or the TWC. The Comptroller's and the TWC's priority tax claims shall accrue interest at the statutory rate of interest, currently 9.5% per annum until paid in full.

A failure by the Debtors or Reorganized Debtors to make a plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtors or Reorganized Debtors fail to cure an Event of Default as to an agency of the State of Texas within five (5) days after service of a written notice of default by email to counsel for Debtors at robert@demarcomitchell.com, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court.  The Debtors and/or Reorganized Debtors can receive up to three (3) notices of default, however, the third default cannot be cured. The Texas Comptroller and TWC preserve all available bankruptcy and state law remedies, if any, in the event of default of payment on claims as laid out herein above.

Debtors and/or Reorganized Debtors shall file all delinquent returns due and owing to Texas Comptroller or TWC on or before Effective date and stay current on filings thereafter. Notwithstanding anything to the contrary in the Plan or this Order, the Debtors and/or Reorganized Debtors will retain documents for the four-year inspection period set forth in Texas Tax Code § 111.0041(a) (or for any pending audits, the later of four years or the time any and all claim(s) based on such audit are resolved).

<u>Comptroller Priority Tax Claim</u>.  Estimated at $24,119.80 based upon the proof of claim filed by the Comptroller.  Which Claim, if allowed and paid interest over a period of 4.5 years would result in a monthly payment of $507.00.

<u>Address for Payment</u>.  Until further notice, all payments due the Comptroller shall be sent to the following address:  **Revenue**

| | |
|---|---|
| | **Accounting Division**, Attention: Bankruptcy, P.O. Box 13528, Austin, TX, 78711. |
| 3.4. **EXCEPTION: Payment of Administrative Expense Claims Through Plan Term** | If the Plan is confirmed pursuant to § 1191(b) any and all claims of a kind specified in paragraph (2) or (3) of § 507(a) of the Bankruptcy Code shall be paid the Allowed amount of such claim in equal monthly installments during the Plan Term commencing on the Effective Date or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |

### ARTICLE 4:   TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.1. Claims and Interests shall be treated as follows under this Plan**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1A - Secured Claim of *Ad Valorem* Tax Authorities | ☑ Impaired<br>☐ Unimpaired | Each holder of an Allowed Class 1A Claim payable to a taxing authority for *ad valorem* taxes shall retain its full rights and liens to the extent of its Allowed Secured Tax Claim until its Allowed Secured Tax Claim has been paid in full.<br><br>Payment shall be made in full no later than five (5) years from and after the Petition Date in equal monthly payments.  More specifically, the prepetition and post-petition *ad valorem* taxes of the holder of an Allowed Class 1A Claim shall be treated as follows:<br><br>Liens and Interest.  Any and all liens (both those arising prepetition and post-petition) held by the holder of an Allowed Class 1A Claim shall be preserved in any transfer of assets under the Plan.  Each holder of an Allowed Class 1A Claim shall be entitled to receive interest from the Petition Date to the Effective Date pursuant to 11 U.S.C. § 506(b), as well as from the Effective Date until paid in full at a statutory rate of 1% per month as required by 11 U.S.C. § 511.  If the post-petition *ad valorem* taxes are not paid prior to the State law delinquency date, each holder of an Allowed Class 1A Claim shall be entitled to receive any penalties and interest that accrue under State law based on the nonpayment of such tax.<br><br>Default.  In the event the Reorganized Debtor fails to timely pay an Allowed Class 1A Claim or a post-petition tax in compliance with the Plan, |

the Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1A Claim may pursue remedies in accordance with that section against the Reorganized Debtor.

Payments.  The Allowed Class 1A Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$300.00** commencing the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1A Claim is paid in full.

Estimation of Amount.  Debtor estimates the aggregate of all Allowed Class 1A Claims is **$7,705.37** based upon the Court's claim register.

| Class 1B - Secured Claim of **SBA** | ☐ Impaired<br>☒ Unimpaired | Class 1B Summary.  Class 1B consists of the Secured Claim of SBA.  The SBA has not filed a proof of claim.  Debtor asserts it is owed approximately **$2,160,833.13**.  The Allowed Class 1B Claim shall not be modified. |
|---|---|---|

No Modification.  The holder of an Allowed Class 1B Claim shall be treated as a perfected and unavoidable secured claim, to the same extent and priority as existed on the Petition Date.  The Reorganized Debtor shall make all required payments due therunder after the Effective Date in accordance with the terms thereof.

Principal Amount.  The unpaid balance of such Claim shall be as reflected on the books and records of the **SBA** as of the Effective Date.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1B Claim shall remain in full force and effect following the Effective Date.

Default.  In the event the Reorganized Debtors fail to timely pay an Allowed Class 1B Claim the Reorganized Debtors shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1B Claim may

pursue remedies in accordance with that section.

| | | |
|---|---|---|
| Class 1C - Secured Claim of **Ally 5769** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1C Summary</u>. Class 1C consists of the Secured Claim of Ally 5769. Ally 5769 has filed a proof of claim asserting it is owed approximately **$46,710.92**. The Allowed Class 1C Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br><u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1C Claim is hereby allowed as an Allowed Secured Claim in the amount of **$46,710.92**.<br><br><u>Interest</u>. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1D Claim holder at the rate of 9.0% from and after the Confirmation Date.<br><br><u>Payments</u>. The Allowed Class 1C Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$970.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1C Claim is paid in full.<br><br><u>Maturity</u>. The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.<br><br><u>Pre-Payment</u>. At any time after the Effective Date, without penalty or premium, the Allowed Class 1C Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.<br><br><u>Collateral</u>. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1C Claim shall remain in full force and effect following the Effective Date.<br><br><u>Default</u>. In the event Reorganized Debtor fails to timely pay an Allowed Class 1C Claim Reorganized Debtor shall be in default, and, |

subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1C Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1C Claim shall be sent to the following address: **Payment Processing Center**, P.O. Box 78367, Phoenix, AZ 85062.

| Class 1D - Secured Claim of **Ally 4892** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1D Summary</u>.  Class 1D consists of the Secured Claim of Ally 4892. Ally 4892 has filed a proof of claim asserting it is owed approximately **$13,201.80**. The Allowed Class 1D Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br><u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1D Claim is hereby allowed as an Allowed Secured Claim in the amount of **$13,201.80**<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1D Claim holder at the rate of 7.75% from and after the Confirmation Date.<br><br><u>Payments</u>.  The Allowed Class 1D Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$412.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1D Claim is paid in full.<br><br><u>Maturity</u>.  The maturity date shall be the first (1st) day of the 36th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.<br><br><u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1D Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor. |

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1D Claim shall remain in full force and effect following the Effective Date.

Default. In the event Reorganized Debtor fails to timely pay an Allowed Class 1D Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1D Claim may pursue remedies in accordance with that section.

Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1D Claim shall be sent to the following address: **Payment Processing Center**, P.O. Box 78367, Phoenix, AZ 85062.

| Class 1E - Secured Claim of **Ally 8959** | ☑ Impaired<br>☐ Unimpaired | Class 1E Summary. Class 1E consists of the Secured Claim of Ally 8959. Ally 8959 has filed a proof of claim asserting it is owed approximately **$23,464.28**. The Allowed Class 1E Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1E Claim is hereby allowed as an Allowed Secured Claim in the amount of **$23,464.28**.<br><br>Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1E Claim holder at the rate of 12% from and after the Confirmation Date.<br><br>Payments. The Allowed Class 1E Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$522.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1E Claim is paid in full.<br><br>Maturity. The maturity date shall be the first (1st) day of the 60**th** month after the first full calendar month following the Effective Date, at |

which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1E Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1E Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1E Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1E Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1E Claim shall be sent to the following address: **Payment Processing Center**, P.O. Box 78367, Phoenix, AZ 85062.

| Class 1F - Secured Claim of **Ally 5717** | ☑ Impaired<br>☐ Unimpaired | Class 1F Summary.  Class 1F consists of the Secured Claim of Ally 5717.  Ally 5717 has filed a proof of claim asserting it is owed approximately **$30,027.58**.  The Allowed Class 1F Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>Principal Amount.  The unpaid principal balance of the Allowed Class 1F Claim is hereby allowed as an Allowed Secured Claim in the amount of **$30,027.58**.<br><br>Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1F Claim holder at the rate of 10.5% from and after the Confirmation Date.<br><br>Payments.  The Allowed Class 1F Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of |

**$645.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1F Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1F Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1F Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1F Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1F Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1F Claim shall be sent to the following address: **Payment Processing Center**, P.O. Box 78367, Phoenix, AZ 85062.

| | | |
|---|---|---|
| Class 1G - Secured Claim of **Ally 4857** | ☑ Impaired<br>☐ Unimpaired | Class 1G Summary.  Class 1G consists of the Secured Claim of Ally 4857.  Ally 4857 has filed a proof of claim asserting it is owed approximately **$4,246.29**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1G Claim is hereby allowed |

as an Allowed Secured Claim in the amount of **$4,246.29**.

<u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1G Claim holder at the rate of 9% from and after the Confirmation Date.

<u>Payments</u>.  The Allowed Class 1G Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$194.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1G Claim is paid in full.

<u>Maturity</u>.  The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1G Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1G Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1G Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1G Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1G Claim shall be sent to the following address: **Payment Processing Center**, P.O. Box 78367, Phoenix, AZ 85062.

| Class 1H - Secured Claim of **Amur** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1H Summary</u>. Class 1H consists of the Secured Claim of Amur. Amur has not filed a proof of claim. Debtor asserts Amur is owed approximately **$141,584.68**. The Allowed Class 1H Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows. |
|---|---|---|

<u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1H Claim is hereby allowed as an Allowed Secured Claim in the amount of **$141,584.68**.

<u>Interest</u>. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1H Claim holder at the rate of 9% from and after the Confirmation Date.

<u>Payments</u>. The Allowed Class 1H Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$2,940.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1H Claim is paid in full.

<u>Maturity</u>. The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>. At any time after the Effective Date, without penalty or premium, the Allowed Class 1H Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

<u>Collateral</u>. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1H Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>. In the event Reorganized Debtor fails to timely pay an Allowed Class 1H Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1H Claim may

| | | |
|---|---|---|
| | | pursue remedies in accordance with that section. |
| | | **Address for Payment**.  Until further notice, all payments due the holder of an Allowed Class 1H Claim shall be sent to the following address: **Amur Equipment Finance**, P.O Box 255, Grand Island, NE 68801. |
| Class 1I - Secured Claim of **Blue Bridge 5023** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1I Summary</u>.  Class 1I consists of the Secured Claim of Blue Bridge 5023.  Blue Bridge 5023 has filed a proof of claim asserting it is owed approximately **$39,868.08**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows. |
| | | <u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1I Claim is hereby allowed as an Allowed Secured Claim in the amount of **$39,868.08**. |
| | | <u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1I Claim holder at the rate of 5.75% from and after the Confirmation Date. |
| | | <u>Payments</u>.  The Allowed Class 1I Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$768.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1I Claim is paid in full. |
| | | <u>Maturity</u>.  The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full. |
| | | <u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1I Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor. |

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1I Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1I Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1I Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1I Claim shall be sent to the following address: **Blue Bridge Financial, Inc.**, 11921 Freedom Drive, Suite 1130, Reston, VA 20190–1192.

| Class 1J - Secured Claim of **FMC 0381** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1J Summary</u>.  Class 1J consists of the Secured Claim of FMC 0381.  FMC 0381 has filed a proof of claim asserting it is owed approximately **$6,146.26**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1J Claim is hereby allowed as an Allowed Secured Claim in the amount of **$6,146.26**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1J Claim holder at the rate of 8.85% from and after the Confirmation Date.<br><br><u>Payments</u>.  The Allowed Class 1J Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$280.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1J Claim is paid in full.<br><br><u>Maturity</u>.  The maturity date shall be the first (1st) day of the 24th month after the first full calendar month following the Effective Date, at |

which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1J Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1J Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1J Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1J Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1J Claim shall be sent to the following address: **Ford Motor Credit Company, LLC**, Dept 55953 P.O. Box 55000, Detroit, MI 48255.

| Class 1K - Secured Claim of **FMC 3203** | ☑ Impaired<br>☐ Unimpaired | Class 1K Summary.  Class 1K consists of the Secured Claim of FMC 3203. FMC 3203 has filed a proof of claim asserting it is owed approximately **$5,776.92**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1K Claim is hereby allowed as an Allowed Secured Claim in the amount of **$5,776.92**.<br><br>Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1K Claim holder at the rate of 6% from and after the Confirmation Date.<br><br>Payments.  The Allowed Class 1K Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of |

**$256.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1K Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 24th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1K Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1K Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1K Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1K Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1K Claim shall be sent to the following address: **Ford Motor Credit Company, LLC**, Dept 55953 P.O. Box 55000, Detroit, MI 48255.

| Class 1L - Secured Claim of **FMC 2635** | ☑ Impaired<br>☐ Unimpaired | Class 1L Summary.  Class 1L consists of the Secured Claim of FMC 2635. FMC 2635 has filed a proof of claim asserting it is owed approximately **$20,464.82**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1L Claim is hereby allowed |

as an Allowed Secured Claim in the amount of **$20,464.82**.

Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1L Claim holder at the rate of 9% from and after the Confirmation Date.

Payments.  The Allowed Class 1L Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$425.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1L Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1L Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1L Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1L Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1L Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1L Claim shall be sent to the following address: **Ford Motor Credit Company, LLC**, Dept 55953 P.O. Box 55000, Detroit, MI 48255.

| Class 1M - Secured Claim of **FMC 5220** | ☑ Impaired<br>☐ Unimpaired | **Class 1M Summary**.  Class 1M consists of the Secured Claim of FMC 5220.  FMC 5220 has filed a proof of claim asserting it is owed approximately **$38,610.35**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>Principal Amount.  The unpaid principal balance of the Allowed Class 1M Claim is hereby allowed as an Allowed Secured Claim in the amount of **$38,610.35**.<br><br>Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1M Claim holder at the rate of 7.9% from and after the Confirmation Date.<br><br>Payments.  The Allowed Class 1M Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$781.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1M Claim is paid in full.<br><br>Maturity.  The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.<br><br>Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1M Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.<br><br>Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1M Claim shall remain in full force and effect following the Effective Date.<br><br>Default.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1M Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1M Claim may |

|  |  |  |
|---|---|---|
|  |  | pursue remedies in accordance with that section. |
|  |  | <u>Address for Payment</u>. Until further notice, all payments due the holder of an Allowed Class 1M Claim shall be sent to the following address: **Ford Motor Credit Company, LLC**, Dept 55953 P.O. Box 55000, Detroit, MI 48255. |
| Class 1N - Secured Claim of Mitsubishi | ☑ Impaired ☐ Unimpaired | <u>Class 1N Summary</u>. Class 1N consists of the Secured Claim of Mitsubishi. Mitsubishi has filed a proof of claim asserting it is owed approximately **$156,698.25**. The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows. |
|  |  | <u>Principal Amount</u>. The unpaid principal balance of the Allowed Class 1N Claim is hereby allowed as an Allowed Secured Claim in the amount of **$118,000.00**. |
|  |  | <u>Interest</u>. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1N Claim holder at the rate of 9% from and after the Confirmation Date. |
|  |  | <u>Payments</u>. The Allowed Class 1N Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$2,450.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuingon the same day each month thereafter until the Allowed Class 1N Claim is paid in full. |
|  |  | <u>Maturity</u>. The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full. |
|  |  | <u>Pre-Payment</u>. At any time after the Effective Date, without penalty or premium, the Allowed Class 1N Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor. |
|  |  | <u>Collateral</u>. Except to the extent inconsistent herewith or with the law, the validity and |

priority of the lien and security interest securing the Allowed Class 1N Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1N Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1N Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1N Claim shall be sent to the following address: **Kye Law Group, P.C.**, 201 Old Country Road, Suite 120, Melville, NY 11747.

| Class 1O - Secured Claim of **NewLane** | ☑ Impaired<br>☐ Unimpaired | Class 1O Summary.  Class 1O consists of the Secured Claim of NewLane.  NewLane has filed a proof of claim asserting it is owed approximately **$38,356.00**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>Principal Amount.  The unpaid principal balance of the Allowed Class 1O Claim is hereby allowed as an Allowed Secured Claim in the amount of **$38,356.00**.<br><br>Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1O Claim holder at the rate of 9.5% from and after the Confirmation Date.<br><br>Payments.  The Allowed Class 1O Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$805.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1O Claim is paid in full.<br><br>Maturity.  The maturity date shall be the first (1st) day of the 60**th** month after the first full calendar month following the Effective Date, at |

which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1O Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1O Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1O Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1O Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1O Claim shall be sent to the following address: **NewLane Finance Company**, 123 S Broad Street, 17th Floor, Philadelphia, PA 19109.

| Class 1P - Secured Claim of **PNC 9790** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1P Summary</u>.  Class 1P consists of the Secured Claim of PNC 9790.  PNC 9790 has filed a proof of claim asserting it is owed approximately **$4,078.14**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1P Claim is hereby allowed as an Allowed Secured Claim in the amount of **$4,078.14**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1P Claim holder at the rate of 7% from and after the Confirmation Date.<br><br><u>Payments</u>.  The Allowed Class 1P Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of |

**$170.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1P Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the 24th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1P Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Collateral. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1P Claim shall remain in full force and effect following the Effective Date.

Default. In the event Reorganized Debtor fails to timely pay an Allowed Class 1P Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1P Claim may pursue remedies in accordance with that section.

Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1P Claim shall be sent to the following address: **Michael McGinley-VP Litigation and Recovery**, 655 Business Center Drive, Horsham, PA 19044.

| | | |
|---|---|---|
| Class 1Q - Secured Claim of **PNC 9314** | ☑ Impaired<br>☐ Unimpaired | Class 1Q Summary. Class 1Q consists of the Secured Claim of PNC 9314. PNC 9314 has filed a proof of claim asserting it is owed approximately **$71,253.97**. The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1Q Claim is hereby allowed |

as an Allowed Secured Claim in the amount of **$71,253.97**.

Interest.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1Q Claim holder at the rate of 7% from and after the Confirmation Date.

Payments.  The Allowed Class 1Q Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$1,411.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1Q Claim is paid in full.

Maturity.  The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

Pre-Payment.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1Q Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Collateral.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1Q Claim shall remain in full force and effect following the Effective Date.

Default.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1Q Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1Q Claim may pursue remedies in accordance with that section.

Address for Payment.  Until further notice, all payments due the holder of an Allowed Class 1Q Claim shall be sent to the following address: **Michael McGinley-VP Litigation and Recovery**, 655 Business Center Drive, Horsham, PA 19044.

| | | |
|---|---|---|
| Class 1R - Secured Claim of **PNC 0203** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1R Summary</u>.  Class 1R consists of the Secured Claim of PNC 0203.  PNC 0203 has filed a proof of claim asserting it is owed approximately **$83,728.65**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows. |

<u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1R Claim is hereby allowed as an Allowed Secured Claim in the amount of **$83,728.65**.

<u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1R Claim holder at the rate of 3.9% from and after the Confirmation Date.

<u>Payments</u>.  The Allowed Class 1R Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$1,658.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1R Claim is paid in full.

<u>Maturity</u>.  The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1R Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1R Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1R Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1R Claim may

|  |  | pursue remedies in accordance with that section. |
|---|---|---|
|  |  | <u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1R Claim shall be sent to the following address: **Michael McGinley-VP Litigation and Recovery**, 655 Business Center Drive, Horsham, PA 19044. |
| Class 1S - Secured Claim of the **Simmons** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1S Summary</u>.  Class 1S consists of the Secured Claim of Simmons.  Simmons has filed a proof of claim asserting it is owed approximately **$40,100.06**.  The Allowed Class 1S Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1S Claim is hereby allowed as an Allowed Secured Claim in the amount of **$40,100.06**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1S Claim holder at the rate of 7.75% from and after the Confirmation Date.<br><br><u>Payments</u>.  The Allowed Class 1S Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$808.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1S Claim is paid in full.<br><br><u>Maturity</u>.  The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at which time the remaining balance due and owing, if any, shall be paid in full.<br><br><u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1S Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.<br><br><u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and |

priority of the lien and security interest securing the Allowed Class 1S Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1S Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1S Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1S Claim shall be sent to the following address: **Simmons Bank**, P.O. Box 733, Union City, TN 38261.

| Class 1T - Secured Claim of **Blue Bridge 4469** | ☑ Impaired<br>☐ Unimpaired | <u>Class 1T Summary</u>.  Class 1T consists of the Secured Claim of Blue Bridge 4469.  Blue Bridge 4469 has filed a proof of claim asserting it is owed approximately **$59,503.77**.  The Allowed Class 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br><u>Principal Amount</u>.  The unpaid principal balance of the Allowed Class 1T Claim is hereby allowed as an Allowed Secured Claim in the amount of **$59,503.77**.<br><br><u>Interest</u>.  Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1T Claim holder at the rate of 5.4% from and after the Confirmation Date.<br><br><u>Payments</u>.  The Allowed Class 1T Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$1,145.00** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1T Claim is paid in full.<br><br><u>Maturity</u>.  The maturity date shall be the first (1st) day of the 60th month after the first full calendar month following the Effective Date, at |

which time the remaining balance due and owing, if any, shall be paid in full.

<u>Pre-Payment</u>.  At any time after the Effective Date, without penalty or premium, the Allowed Class 1T Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

<u>Collateral</u>.  Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1T Claim shall remain in full force and effect following the Effective Date.

<u>Default</u>.  In the event Reorganized Debtor fails to timely pay an Allowed Class 1T Claim Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1T Claim may pursue remedies in accordance with that section.

<u>Address for Payment</u>.  Until further notice, all payments due the holder of an Allowed Class 1T Claim shall be sent to the following address: **Blue Bridge Financial, Inc.**, 11921 Freedom Drive, Suite 1130, Reston, VA 20190–1192.

| Class 2 - Priority Claims excluding those in Article 3 of this Plan | ☐ Impaired<br>☑ Unimpaired | Class 2 consists of all Allowed Priority Claims against the Debtor.  Except to the extent that the holder of such Claim agrees to a different treatment, the Reorganized Debtor shall pay Cash on the Effective Date to each holder of any Allowed Claim in Class 2 the amount of such Allowed Claim against such Reorganized Debtor. |
| --- | --- | --- |
| Class 3 – Non-priority unsecured Claims | ☑ Impaired<br>☐ Unimpaired | Class 3 consists of Allowed Claims against Debtor (including Claims arising from the rejection of executory contracts and/or unexpired leases) other than: (i) Administrative Claims; (ii) Priority Tax Claims; or (iii) Claims included within any other Class designated in this Plan.  Class 3 shall be deemed to include those Creditor(s) holding an alleged Secured Claim against Debtor, for which: (y) no collateral exists to secure the alleged Secured Claim; and/or (z) liens, security interests, or |

other encumbrances that are senior in priority to the alleged Secured Claim exceed the fair market value of the collateral securing such alleged Secured Claims as of the Petition Date.

Each holder of an Allowed Unsecured Claim in Class 3 shall be paid by Reorganized Debtor from an unsecured creditor pool, which pool shall be funded at the rate of **$5,000** per month. Payments from the unsecured creditor pool shall be paid quarterly, **for a period not to exceed five (5) years (20 quarterly payments)** and the first quarterly payment will be due on the twentieth (20th) day of the first full calendar month following the last day of the first quarter.

<u>Estimation of Amount</u>.  Debtor estimates the aggregate of all Allowed Class 3 Claims is less than $378,000 based upon Debtor's review of the Court's claim register, Debtor's bankruptcy schedules, and anticipated Claim objections.

| Class 4 – Equity Security Holders of the Debtor | ☐ Impaired<br>☑ Unimpaired | Class 4 consists of the holders of Allowed Interests in the Debtor.  The holder of an Allowed Class 4 Interest shall retain their interests in the Reorganized Debtor. |

## ARTICLE 5:   ALLOWANCE AND DISALLOWANCE OF CLAIMS

| 5.1. | **Disputed Claim** | A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br><br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br><br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.2. | **Delay of distribution on a disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order. |
| 5.3. | **Settlement of disputed Claims** | The Reorganized Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure |

## ARTICLE 6:   EXECUTORY CONTRACTS

| 6.1. | **Assumed executory contracts and unexpired leases** | (a) Reorganized Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date: |
|---|---|---|

- Landlord – Peck Investments

(b) Reorganized Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.1(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **ninety (90)** days after the Effective Date.

## ARTICLE 7:   MEANS FOR IMPLEMENTATION OF THE PLAN

| 7.1. | **General** | The Debtor proposes to implement and consummate this Plan through the means contemplated by §§ 1123 and 1145(a) of the Bankruptcy Code. |
|---|---|---|
| 7.2. | **Reorganized Debtor and Performance of Assumed Executory Contracts** | From and after the Effective Date, in accordance with the terms of this Plan and the Confirmation Order, the Reorganized Debtor shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with Article 6 of this Plan. |
| 7.3. | **Reorganized Debtor and Estate assets** | **7.3.1.** **Management of Reorganized Debtor**.   The management of Reorganized Debtor will remain unaltered. |

**7.3.2.** **Revesting [§ 1191(a)]**.  On the Effective Date, if the Plan is confirmed pursuant to § 1191(a), title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall vest and/or revest in the Reorganized Debtor.  Thereafter, each Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan.  From and after the Effective Date, except as otherwise described in this Plan, each Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein.

**7.3.3.** **No Revesting [§ 1191(b)]**.  If the Plan is confirmed pursuant to § 1191(b), title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall remain property of the Estate until discharge of the

Reorganized Debtor pursuant to § 1192.  From and after the Discharge Date title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall vest and/or revest in the Reorganized Debtor. Thereafter, each Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan.  From and after the Discharge Date, except as otherwise described in this Plan, each Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein.

7.3.4.  **Disbursing Agent**.  If the Plan is confirmed under § 1191(a) of the Bankruptcy Code the Reorganized Debtor shall serve as the disbursing agent, without bond, for purposes of making transfers and payments under this Plan. If the Plan is confirmed under § 1191(b) of the Bankruptcy Code the disbursing agent shall be:

| | |
|---|---|
| ☐ | SubV Trustee of the Reorganized Debtor |
| ☑ | The Reorganized Debtor as request is hereby made pursuant to § 1194(b) of the Bankruptcy Code. |

| | |
|---|---|
| 7.4.  **Settlement of disputed Claims** | The Reorganized Debtor will each have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure respecting the Estate. |

## ARTICLE 8:   GENERAL PROVISIONS

| | |
|---|---|
| 8.1.  **Definitions** | The definitions set forth in § 101 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |

8.1.1.  ***Ad Valorem* Tax Authorities** means the following:

- Denton County

8.1.2.  **Administrative Claim** means any right to payment constituting a cost or expense of administration of the Case of a kind specified under § 503(b) of the Bankruptcy Code and entitled to priority under §§ 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (i) any actual and necessary costs and expenses of preserving the Estate of the Debtor; (ii) any actual and necessary costs and expenses of operating any of the Debtor's business enterprises; (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business enterprise; (iv) all compensation and reimbursement of expenses to the extent awarded by the Court under §§ 330, 331 or 503 of the Bankruptcy

Code; (v) any fees or charges assessed against the Estate under § 1930 of chapter 123 of title 28 of the United States Code; and (vi) any Claim for goods delivered to the Debtor within twenty days of the Petition Date and entitled to administrative priority pursuant to § 503(b)(9) of the Bankruptcy Code.

8.1.3.  **Allowed Amount** means the amount in lawful currency of the United States of any Allowed Claim, or the number of shares representing any Allowed Interest.

8.1.4.  **Allowed** means, with reference to any Claim or Interest: (i) a Claim against or Interest in the Debtor, proof of which, if required, was filed on or before the Bar Date, which is not a Contested Claim or Contested Interest; (ii) if no proof of claim or interest was so filed, a Claim against or Interest in the Debtor that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009; or (iii) a Claim or Interest allowed hereunder or by Final Order.  Moreover, the following Claims or Interests are not Allowed:  (i) any Claim or Interest allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court; (ii) any Claim or Interest, or any portion thereof, which is subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order; and (iii) any Claim or Interest, or any portion thereof, which is attributable to punitive damages or penalties.

8.1.5.  **Ally 5769** means Ally Bank as it relates to Account number ending in 5769.

8.1.6.  **Ally 4892** means Ally Bank as it relates to Account number ending in 4892.

8.1.7.  **Ally 8959** means Ally Bank as it relates to Account number ending in 8959.

8.1.8.  **Ally 5717** means Ally Bank as it relates to Account number ending in 5717.

8.1.9.  **Ally 4857** means Ally Bank as it relates to Account number ending in 4857.

8.1.10. **Amur** means Amur Equipment Finance Inc.

8.1.11. **Avoidance Action** means any claim or cause of action belonging to the Debtor and arising under the Bankruptcy Code including, but not limited to, §§ 544, 547, 548 and 550.

8.1.12. **Ballot** means each of the ballot forms distributed to each holder of an impaired Claim or Interest (other than to holders not entitled to vote on the Plan) upon which is to be

indicated, among other things, acceptance or rejection of the Plan.

8.1.13. **Bankruptcy Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the date hereof.

8.1.14. **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

8.1.15. **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under § 2075 of title 28 of the United States Code, and local rules of the Court, as the context requires, and as in effect on the date hereof.

8.1.16. **Bar Date** means the deadline by which a Claim must have been timely filed.  The Bar Date for all Administrative Claims is the date that is ninety (90) days after the Effective Date.

8.1.17. **Blue Bridge 4469** means Blue Bridge Financial, Inc., as it relates to account ending in 4469.

8.1.18. **Blue Bridge 5023** means Blue Bridge Financial, Inc., as it relates to account ending in 5023.

8.1.19. **Business Day** means any day other than a Saturday, a Sunday or a "legal holiday" as that phrase is defined in Bankruptcy Rule 9006(a).

8.1.20. **Case** means the above entitled and numbered case which was commenced by the Debtor filing of a voluntary petition for relief pursuant to the Bankruptcy Code.

8.1.21. **Causes of Action** means any and all claims, rights and causes of action that have been or could have been brought by or on behalf of the Debtor arising before, on or after the Petition Date, known or unknown, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to any and all claims, rights and causes of action the Debtor or the Estate may have against any Person arising under chapter 5 of the Bankruptcy Code, or any similar provision of state law or any other law, rule, regulation, decree, order, statute or otherwise, including but not limited to any claim or cause of action under a policy of insurance, claims, if any, against officers and directors of the Debtor, Avoidance Actions under the Code, and any other causes of action belonging to the Debtor or the Estate.

8.1.22. **Claim** means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a

right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

8.1.23. **Claimant** means the holder of a Claim or Interest.

8.1.24. **Claims Objection Deadline** means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be ninety (90) days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein.

8.1.25. **Class** means all of the holders of Claims or Interests with respect to the Debtor that has been designated as a class in Article 4 hereof.

8.1.26. **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

8.1.27. **Confirmation Date** means the date of entry by the Bankruptcy Court of an order confirming the Plan.

8.1.28. **Confirmation Hearing** means the hearing or hearings to be held before the Bankruptcy Court in which the Debtor shall seek Confirmation of this Plan.

8.1.29. **Confirmation Order** means the Final Order confirming this Plan.

8.1.30. **Contested** when used with respect to a Claim or Interest, means a Claim against or Interest in the Debtor that is: (i) listed in any of the Debtor's Schedules as disputed, contingent, or unliquidated and as to which a proof of claim has been timely filed; (ii) listed in any of the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim or Interest has been filed with the Bankruptcy Court, to the extent the proof of Claim or Interest amount exceeds the amount provided for in any of the Debtor's Schedules; or (iii) the subject of an objection which has been or may be timely filed by any party in interest or the United States Trustee and which claim has not been disallowed by Final Order.  To the extent an objection relates to the allowance of only a part of a Claim or Interest, such a Claim or Interest shall be a Contested Claim or Contested Interest only to the extent of the objection.

8.1.31. **Creditor** means holder of a Claim as of the Petition Date.

8.1.32. **Debtor** means, **Stenson Landscape & Irrigation, Inc**.

8.1.33. **Discharge Date** means the date the Reorganized Debtor attains a discharge under § 1192 of the Bankruptcy Code.

8.1.34. **Entity** includes any individual, partnership, corporation, estate, trust, governmental unit, person, and the United States Trustee.

8.1.35. **Estate** means the bankruptcy estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of this Case.

8.1.36. **Final Order** means: (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending or, (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the Confirmation Order may be treated as a Final Order if no stay pending appeal has been obtained.

8.1.37. **FMC 0381** means Ford Motor Credit Company, LLC, as it relates to account ending in 0381.

8.1.38. **FMC 3203** means Ford Motor Credit Company, LLC, as it relates to account ending in 3203.

8.1.39. **FMC 2635** means Ford Motor Credit Company, LLC, as it relates to account ending in 2635.

8.1.40. **FMC 5220** means Ford Motor Credit Company, LLC, as it relates to account ending in 5220.

8.1.41. **Initial Distribution Date** means the first Business Day on which a distribution is made under the Plan to holders of Allowed Claims.

8.1.42. **Insider** means: (i) a director of the Debtor; (ii) an officer of the Debtor; (iii) a person in control of the Debtor; (iv) a partnership in which the Debtor is general partner; (v) a general partner of the Debtor; (vi) a relative of a general partner in, general partner of, or person in control of the Debtor, (vii) an affiliate (defined in § 101(2) of the Bankruptcy Code) of the Debtor or an Insider of an affiliate as if such affiliate were a Debtor; and (viii) a managing agent of the Debtor.

8.1.43. **Interest** means: (i) the membership interests or ownership interests in the Debtor; and (ii) any right or option, however arising, to acquire a membership interest or any other equity interest in the Debtor.

8.1.44. **IRS** means the Internal Revenue Service.

8.1.45. **Lien** means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtor's estate, which is permitted by, or not avoided pursuant to the Bankruptcy Code.

8.1.46. **Misubishi** means Mitsubishi HC Capital America, Inc.

8.1.47. **Newlane** means NewLane Finance Company.

8.1.48. **Petition Date** means **February 1, 2024**, the date the Debtor filed a voluntary bankruptcy petition commencing this Case.

8.1.49. **Plan** means this "**Third Amended Plan of Reorganization [Dated July 15, 2024]**", including all exhibits and attachments, each of which is hereby incorporated and made part thereof, as modified or amended from time to time in accordance with § 1127 of the Bankruptcy Code.

8.1.50. **Plan Rate** means the Prime Rate as of the Effective Date or such other rate of interest as is determined by the Bankruptcy Court.

8.1.51. **Plan Term** means the duration of the Plan which in this case is five (5) years from and after the Effective Date.

8.1.52. **Prime Rate** means the prime interest rate quoted and published from time-to-time in the "Money Rates" section of the *Wall Street Journal*.

8.1.53. **Priority Claim** means all Claims entitled to priority under §§ 507(a)(2)-(a)(7) and (a)(9)-(a)(10) of the Bankruptcy Code.

8.1.54. **Priority Tax Claim** means all Claims for Taxes entitled to priority under § 507(a)(8) of the Bankruptcy Code, and shall include all Tax Claims secured by assets of the Estate.

8.1.55. ***Pro Rata*** means proportionately, so that with respect to a particular Allowed Claim, the ratio of: (i) the monies or property disbursed on account of such Allowed Claim to the amount of such Allowed Claim, is the same as the ratio of (ii) the monies or property disbursed on account of all Allowed Claims of the Class in which such Allowed Claim is included to the amount of all Allowed Claims in that Class.

8.1.56. **Professionals** means those Entities: (i) employed under §§ 327 or 1103 of the Bankruptcy Code; and (ii) entitled, under §§ 330, 503(b), 506(b), and 507(a)(2) of the Bankruptcy Code, to seek compensation for legal, accounting and/or other professional services and the costs and expenses related to such services from the Debtor and/or the Estate.

8.1.57. **Rejection Damages Deadline** means the later of the Bar Date, or thirty (30) days after the entry of an order approving the rejection of an executory contract or unexpired lease.

8.1.58. **Reorganized Debtor** means, **Stenson Landscape & Irrigation, Inc.**, after the entry of the Confirmation Order.

8.1.59. **Schedules** means those schedules, statements and lists filed with the Court by the Debtor pursuant to and in accord with § 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b).

8.1.60. **Secured Claim** means a Claim secured by a Lien on any property of the Estate, but only to the extent of the value of the interest of the holder of such Claim in the interest of the subject Estate in such property, the calculation of which shall not include any demand for default interest, penalty interest or other similar demands.

8.1.61. **Simmons** means Simmons Bank.

8.1.62. **State Comptroller** means the Texas Comptroller of Public Accounts.

8.1.63. **Subordinated Claim** means: (i) any Claim, or portion of a Claim, that is subject to subordination under § 510 of the Bankruptcy Code; and (ii) any Claim, or portion of a Claim, for fines, penalties, forfeitures, for multiple, exemplary, or punitive damages, or other non-pecuniary, direct or non-proximate damages.

8.1.64. **SubV Trustee** means individual appointed as trustee under § 1183 of the Bankruptcy Code.

8.1.65. **Tax** means and includes any federal state, county and local income, *ad valorem*, excise, stamp and other tax of any type or nature whatsoever.

8.1.66. **Tax Claim** means any and all Secured or Priority Claims of the Debtor for the payment of any Taxes: (i) accorded a priority pursuant to § 507(a)(8) of the Code; or (ii) secured by valid Liens on property of the Estate existing on the Confirmation Date.

8.1.67. **TD Auto** means TD Auto Finance.

8.1.68. **United States Trustee** means the Office of the United States Trustee for Region Six.

8.1.69. **Unsecured Claim** means a Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

| | | |
|---|---|---|
| 8.2. | **Effective Date** | The date on which the Confirmation Order becomes a Final Order. |
| 8.3. | **Severability** | If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceabililty and operative effect on any other provision of this Plan. |
| 8.4. | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.5. | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.6. | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided for in this Plan. |
| 8.7. | **Corporate Governance** | The management of each Reorganized Debtor will remain unaltered. |
| 8.8. | **Retention of Jurisdiction** | The Bankruptcy Court shall retain exclusive jurisdiction over this Case after Confirmation, notwithstanding consummation or substantial consummation, for the following purposes: |

8.8.1.   to consider and effect any modification of this Plan under § 1127 of the Bankruptcy Code;

8.8.2.   to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

8.8.3.   to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

8.8.4.   to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

8.8.5.   to hear and determine all claims that the Debtor, as debtor in possession qua trustee, could assert under the Bankruptcy Code;

8.8.6. to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

8.8.7. to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan;

8.8.8. to approve the reasonableness of any payments made or to be made, within the meaning of § 1129(a)(4) of the Bankruptcy Code;

8.8.9. to exercise the jurisdiction granted pursuant to §§ 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

8.8.10. to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan;

8.8.11. to hear and determine any controversies with respect to any settlements approved by the Bankruptcy Court;

8.8.12. to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Reorganized Debtor; and

8.8.13. to enter a final decree closing any or all Cases.

8.8.14. **Failure of the Bankruptcy Court to Exercise Jurisdiction**. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, in or related to the Debtor's Estate, including with respect to the matters set forth herein, this Article 8 shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

| 8.9. | **Rules of construction** | The rules of construction set forth in § 102 of the Code shall apply and are supplemented as follows: |

8.9.1. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clauses contained in the Plan.

8.9.2. Unless otherwise specified, a reference to an article or a section is a reference to that article or section of the Plan.

8.9.3. Any reference in the Plan to a document being in a particular for or on particular terms and conditions meant that

the document shall be substantially in such form or substantially on such terms and conditions.

8.9.4.   Any reference in the Plan to an existing document means such document, as it may have been amended, modified or supplemented from time to time as of the Effective Date.

8.10.    All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

## ARTICLE 9:   DISCHARGE

### DISCHARGE IF PLAN IS CONFIRMED UNDER § 1191(a) OF THE BANKRUPTCY CODE

| | |
|---|---|
| ☐ | **Discharge if the Debtor is an individual and § 1141(d)(3) is not applicable.** Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. |
| ☐ | **Discharge if the Debtor is a partnership and § 1141(d)(3) is not applicable.** On the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan. |
| ☑ | **Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable.** On the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:<br><br>(i) imposed by this Plan; or<br><br>(ii) to the extent provided in § 1141(d)(6). |
| ☐ | No discharge if § 1141(d)(3) is applicable. In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case. |

### DISCHARGE IF PLAN IS CONFIRMED UNDER § 1191(b) OF THE BANKRUPTCY CODE

If the Plan is confirmed under section 1191(b) of this title, as soon as practicable after completion by the Debtor of all payments due within the Plan Term, the Court shall grant the Debtor a discharge of all debts provided in §§ 503 and 1141(d)(1)(A) of the Bankruptcy Code to the extent provided for in the Plan, except any debt:  (1) on which the last payment is due after the Plan Term; or (2) of the kind specified in § 523(a) of the Bankruptcy Code.

## ARTICLE 10:  OTHER PROVISIONS

| | |
|---|---|
| **10.1. Conditions to Consummation** | The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Debtor:<br><br>10.1.1. The Confirmation Order must have become a Final Confirmation Order.<br><br>10.1.2. No request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending; and<br><br>10.1.3. All actions, documents and agreements necessary to implement the Plan shall have been effectuated or executed.<br><br>10.1.4. **Waiver of Conditions**.  Each of the conditions set forth above may be waived in whole or in part by the Debtor in its sole and absolute discretion, without any notice to parties in interests or the Bankruptcy Court, and without a hearing.  The Debtor's waiver of any one condition shall not be deemed a waiver of any other condition. |
| **10.2. Binding Effect** | Except as otherwise provided in § 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan. |
| **10.3. Injunction** | 10.3.1. **Permanent Injunction**.    Except as otherwise expressly provided in, or permitted under, this Plan, all Creditors and Interest holders, are permanently enjoined on and after the Effective Date against the collecting of Claims against the Reorganized Debtor in any manner other than as provided for in the Plan.<br><br>10.3.2. **The injunction provisions set forth herein do not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination of the** |

**Allowed Amount of any Claims that arose prior to the Effective Date by a court of competent jurisdiction.**

| | |
|---|---|
| 10.4. **Notice of Default** | **Notice of Default**.  Except as otherwise provided herein with respect to the treatment of a Class of Creditors, in the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the defaulting Reorganized Debtor with copies to counsel of record for the defaulting Reorganized Debtor specifying the nature of the default.  Upon receipt of the default notice, the defaulting Reorganized Debtor shall have ten (10) days to cure such default from the time of receipt of the default notice.  If such default has not been cured within the applicable time period any such Creditor or party-in-interest shall have the right to exercise any and all available remedies, including the right to undertake foreclosure upon any collateral securing the obligation, if applicable. |
| 10.5. **Miscellaneous** | 10.5.1. **Request for Relief Under Section 1191(b)**.  In the event any Class of Creditors or Interests shall fail to accept this Plan in accordance with §§ 1129(a) and 1191(a) of the Bankruptcy Code, the Debtor requests the Bankruptcy Court to confirm this Plan in accordance with the provisions of § 1191(b) of the Bankruptcy Code.

10.5.2. **Incorporation of Rule 9019**.  To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.

10.5.3. **Computation of Time**.  The computation of any time periods prescribed or allowed by the Plan shall be governed by Bankruptcy Rule 9006.

10.5.4. **Exhibits**.  All exhibits to the Plan are incorporated into the Plan and shall be deemed to be part of the Plan.

10.5.5. **Modification**.  The Debtor may alter, amend or modify this Plan under § 1127 of the Bankruptcy Code or as otherwise permitted by law prior to Confirmation.  Further, the Reorganized Debtor may also seek to modify the Plan after Confirmation and prior to substantial consummation of the Plan so long as the treatment of the holders of Allowed Claims or Interests are not materially or adversely affected.

10.6.   **Due Authorization**.  Each and every Claim and Interest holder who elects to participate in the distributions provided for herein warrant that such Claim or Interest holder is authorized to accept, in consideration of such Claim against or Interest in the Debtor, the distributions provided for in this Plan and that there |

are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claim or Interest holder under this Plan.

10.7. **Authorization of Corporate Action**. All matters and actions provided for under this Plan involving the structure of the Debtor or action to be taken by or required of the Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be deemed to be authorized and approved in all respects without any requirement for further action by the members or partners of the Debtor, as applicable.

10.8. **Further Assurances and Authorizations**. The Debtor and/or the Reorganized Debtor, if and to the extent necessary, shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan.

10.9. **Privileged Communications; Work Product.** For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Reorganized Debtor shall succeed to the interest of the Debtor and Estate, to the extent provided by applicable law.

10.10. **No Interest**. Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

10.11. **No Attorneys' Fees**. No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtor, except as specified herein or as allowed by a prior order of the Bankruptcy Court.

10.12. **Post-Confirmation Actions**. After Confirmation, the Reorganized Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of this Plan.

10.13. **Post-Confirmation Conversion and/or Dismissal**. Any Creditor or interested party, in the event of a default under the terms of this Plan, may file a motion to dismiss or convert this case pursuant to § 1112 of the Bankruptcy Code after the Plan is confirmed if the Case has not been closed or the Plan confirmed pursuant under section 1191(b). If the Bankruptcy Court orders

the case converted to one under Chapter 7, then all property that had been property of the chapter 11 bankruptcy estate, and not previously disbursed under the terms of this Plan, shall revest in the Chapter 7 bankruptcy estate.  Further, to the extent relief from stay had not previously been granted during the chapter 11 bankruptcy process, a new automatic stay shall be reimposed upon all property of the Chapter 7 bankruptcy estate.

10.14.  **Post-Confirmation Removal of Reorganized Debtor**.  In the event the Reorganized Debtor fails to perform its obligations under the confirmed Plan, the Court shall order the Reorganized Debtor to be removed as a debtor-in-possession in accord with § 1185(a) of the Bankruptcy Code and the SubV Trustee shall perform the duties specified in § 704(a)(8) of the Bankruptcy Code and paragraphs (1), (2), and (6) of § 1106(a) of this title, including operating the business of the debtor in accord with § 1183(b)(5) of the Bankruptcy Code.

10.14.1.    Should this Plan be confirmed pursuant to § 1191(a) of the Bankruptcy Code any and all property that vests in the Reorganized Debtor under the terms of this Plan shall vest and/or revest in the Reorganized Debtor's Estate in the event the Reorganized Debtor is removed under § 1185(a) of the Bankruptcy Code.

10.15.  **Minimum Distribution**.  Notwithstanding anything to the contrary in this Plan, the Reorganized Debtor shall be required to make distributions under this Plan of a sum less than $100.00 to any Allowed Claim holder.  In such case, the Allowed Amount of such Claims shall be reduced to zero and such funds shall be retained by the Reorganized Debtor.

10.16.  **Substantial Consummation**.  If the Plan is confirmed pursuant to § 1191(a) of the Bankruptcy Code, substantial consummation shall be deemed to occur when the Reorganized Debtor makes initial distributions pursuant to the terms of the Plan.

10.17.  **Notices**.  All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested.  Any notices required to be delivered to the Debtor shall be addressed as follows:

**To Debtor and/or Reorganized Debtor:**
**Stenson Landscape & Irrigation, Inc.**
Attention:  Tracy Doyle
PO Box 955
Lake Dallas, TX 75065

**With a copy to:**
Robert T. DeMarco
DeMarco Mitchell, PLLC
12770 Coit Road, 850
Dallas, TX 75251

10.18.  **Notices and Distributions**.  On and after the Effective Date, all notices, requests and distributions to Claimants shall be sent to the last known address of: (1) the Claimant or its/his/her attorney of record as reflected in the Claimant's proof of claim; or (2) if there is no such evidence of a last known address, to the last known address of the Claimant according to the books and records of either Debtor.  Any Claimant may designate another address for the purposes of this Section by providing the subject Reorganized Debtor written notice of such address, which notice will be effective upon receipt by said Reorganized Debtor.

10.19.  **Unclaimed Property**.  If any property distributed under the Plan by the Reorganized Debtor remains unclaimed for a period of two (2) years the initial date of the attempted delivery such unclaimed property shall be forfeited by the Claimant and the unclaimed property and the right to receive it shall revert to and vest in the subject Reorganized Debtor free and clear of any claims, rights or interests.  Said Reorganized Debtor, on the anniversary of the Effective date, shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of all holders of unclaimed distributions.

10.20.  **Setoff**.  Except as specifically provided in the Plan, no Creditor shall retain any contractual or statutory right to set off any asset in which either Debtor or Reorganized Debtor has an interest in satisfaction of that Creditor's pre-petition Claim.  Any right to set off a claim against an asset of either Debtor or Reorganized Debtor which is not specifically retained is waived.

10.21.  **No Admissions**.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Plan Proponents with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety, any classification of any Claim or Interest, or the valuation of any property.

Respectfully submitted,

Dated: **July 15, 2024**

*/s/ Tracy Doyle*

**Tracy Doyle**
President,
**Stenson Landscape & Irrigation, Inc.**

Presented by:

*/s/ Robert T. DeMarco*

**DeMarco•Mitchell, PLLC**
Robert T. DeMarco, Texas Bar No. 24014543
**Email**    robert@demarcomitchell.com
Michael S. Mitchell, Texas Bar No. 00788065
**Email**    mike@demarcomitchell.com
12770 Coit Road, 850
Dallas, TX 750251
**T**        972-991-5591
**F**        972-346-6791

**Attorneys for the Debtor and
Debtor-in-Possession**

# EXHIBIT "A"

A.     **CHAPTER 7 DIVIDENDS PAID**.  The Debtor makes the following assumptions:

| ASSET | LIQUIDATION VALUE | LIEN | NET ASSET VALUE |
|---|---|---|---|
| A/R | $350,000.00[2] | $2,160,833.13 | $0.00 |
| Equipment | $1,200,000.00[3] | $2,795,643.20 | $0.00 |
| **TOTAL** | | | **$0.00** |

As set forth in the above table, Debtor asserts the liquidation value of the Debtor's NONEXEMPT collective assets, net of secured liens, is approximately $0.00.

B.     **PLAN DIVIDENDS PAID**.  The Debtor makes the following assumptions:

| ASSUMPTION | COST |
|---|---|
| The Debtor is able to continue operating through the Plan Term and will meet or exceed the projections provided herewith. | n/a |
| The Debtor will not liquidate any equipment or inventory. | n/a |

The Plan provides for a $300,000 dividend to all unsecured creditors over a period of five (5) years**.** Debtor contends the Plan provides for a greater dividend to all creditors than would a liquidation of assets under chapter 7.

---

[2] This value reflects a 50% reduction of the receivables booked.
[3] This value reflects a 60% of the Debtor's estimation of fair market value.

# EXHIBIT "B"

Set of projections are attached.

| | 7 | 8 | 9 | 10 | 11 | 12 | 1 | 2 |
|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | |
| **Gross Income** | $395,000.00 | $395,000.00 | $395,000.00 | $395,000.00 | $395,000.00 | $395,000.00 | $395,000.00 | $395,000.00 |
| **Other Income** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTAL Income** | **$395,000.00** | **$395,000.00** | **$395,000.00** | **$395,000.00** | **$395,000.00** | **$395,000.00** | **$395,000.00** | **$395,000.00** |
| **EXPENSES** | | | | | | | | |
| **Materials** | $78,000.00 | $78,000.00 | $78,000.00 | $78,000.00 | $78,000.00 | $78,000.00 | $78,000.00 | $78,000.00 |
| **Bank Charges & Fees** | $2,300.00 | $2,300.00 | $2,300.00 | $2,300.00 | $2,300.00 | $2,300.00 | $2,300.00 | $2,300.00 |
| **Equipment Rental** | $7,275.00 | $7,275.00 | $7,275.00 | $7,275.00 | $7,275.00 | $7,275.00 | $7,275.00 | $7,275.00 |
| **Insurance** | | | | | | | | |
| **Liability Insurance** | | | | | | | | |
| **Casualty Insurance** | | | | | | | | |
| **Workers' Comp Insurance** | $19,215.00 | $19,215.00 | $19,215.00 | $19,215.00 | $19,215.00 | $19,215.00 | $19,215.00 | $19,215.00 |
| **Total Insurance** | **$19,215.00** | **$19,215.00** | **$19,215.00** | **$19,215.00** | **$19,215.00** | **$19,215.00** | **$19,215.00** | **$19,215.00** |
| **Legal & Professional Services** | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| **Office Expense** | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| **Office Supplies** | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| **Payroll Expenses** | | | | | | | | |
| **Payroll Taxes** | $15,444.00 | $15,444.00 | $15,444.00 | $15,444.00 | $15,444.00 | $15,444.00 | $15,444.00 | $15,444.00 |
| **Wages** | $181,996.00 | $181,996.00 | $181,996.00 | $181,996.00 | $181,996.00 | $181,996.00 | $181,996.00 | $181,996.00 |
| **Total Payroll Expenses** | **$197,440.00** | **$197,440.00** | **$197,440.00** | **$197,440.00** | **$197,440.00** | **$197,440.00** | **$197,440.00** | **$197,440.00** |
| **Postage & Delivery Charges** | | | | | | | | |
| **Property Tax Expense** | $1,325.00 | $1,325.00 | $1,325.00 | $1,325.00 | $1,325.00 | $1,325.00 | $1,325.00 | $1,325.00 |
| **Rent & Lease** | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| **Repairs & Maintenance** | $7,395.00 | $7,395.00 | $7,395.00 | $7,395.00 | $7,395.00 | $7,395.00 | $7,395.00 | $7,395.00 |
| **Security Expense** | | | | | | | | |
| **Telephone Expense** | $700.00 | $700.00 | $700.00 | $700.00 | $700.00 | $700.00 | $700.00 | $700.00 |
| **Toll & Parking** | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| **Uniform** | $225.00 | $225.00 | $225.00 | $225.00 | $225.00 | $225.00 | $225.00 | $225.00 |
| **Utilities** | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 |
| **Vehicle Fuel** | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 |
| **TOTAL Expenses** | **$346,975.00** | **$346,975.00** | **$346,975.00** | **$346,975.00** | **$346,975.00** | **$346,975.00** | **$346,975.00** | **$346,975.00** |
| **Net Income** | $48,025.00 | $48,025.00 | $48,025.00 | $48,025.00 | $48,025.00 | $48,025.00 | $48,025.00 | $48,025.00 |
| **PLAN** | | | | | | | | |
| **SBA (not modified)** | $10,002.00 | $10,002.00 | $10,002.00 | $10,002.00 | $10,002.00 | $10,002.00 | $10,002.00 | $10,002.00 |
| **Ally 5769** | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 |
| **Ally 4892** | $412.00 | $412.00 | $412.00 | $412.00 | $412.00 | $412.00 | $412.00 | $412.00 |
| **Ally 8959** | $522.00 | $522.00 | $522.00 | $522.00 | $522.00 | $522.00 | $522.00 | $522.00 |
| **Ally 5717** | $645.00 | $645.00 | $645.00 | $645.00 | $645.00 | $645.00 | $645.00 | $645.00 |
| **Ally 4857** | $194.00 | $194.00 | $194.00 | $194.00 | $194.00 | $194.00 | $194.00 | $194.00 |
| **Amur** | $2,940.00 | $2,940.00 | $2,940.00 | $2,940.00 | $2,940.00 | $2,940.00 | $2,940.00 | $2,940.00 |
| **Blue Bridge 5023** | $768.00 | $768.00 | $768.00 | $768.00 | $768.00 | $768.00 | $768.00 | $768.00 |
| **Blue Bridge 4469** | $1,145.00 | $1,145.00 | $1,145.00 | $1,145.00 | $1,145.00 | $1,145.00 | $1,145.00 | $1,145.00 |
| **Comptroller** | $507.00 | $507.00 | $507.00 | $507.00 | $507.00 | $507.00 | $507.00 | $507.00 |
| **Denton - Ad Valorem** | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 |
| **FMC 0381** | $280.00 | $280.00 | $280.00 | $280.00 | $280.00 | $280.00 | $280.00 | $280.00 |
| **FMC 3203** | $256.00 | $256.00 | $256.00 | $256.00 | $256.00 | $256.00 | $256.00 | $256.00 |
| **FMC 2635** | $425.00 | $425.00 | $425.00 | $425.00 | $425.00 | $425.00 | $425.00 | $425.00 |
| **FMC 5220** | $781.00 | $781.00 | $781.00 | $781.00 | $781.00 | $781.00 | $781.00 | $781.00 |
| **IPFS** | $1,095.00 | $1,095.00 | $1,095.00 | $1,095.00 | $1,095.00 | $1,095.00 | $1,095.00 | $1,095.00 |
| **IRS** | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 |
| **Mitsubishi** | $2,450.00 | $2,450.00 | $2,450.00 | $2,450.00 | $2,450.00 | $2,450.00 | $2,450.00 | $2,450.00 |
| **Newlane** | $805.00 | $805.00 | $805.00 | $805.00 | $805.00 | $805.00 | $805.00 | $805.00 |
| **PNC 9790** | $184.00 | $184.00 | $184.00 | $184.00 | $184.00 | $184.00 | $184.00 | $184.00 |
| **PNC 9314** | $1,411.00 | $1,411.00 | $1,411.00 | $1,411.00 | $1,411.00 | $1,411.00 | $1,411.00 | $1,411.00 |
| **PNC 0203** | $1,658.00 | $1,658.00 | $1,658.00 | $1,658.00 | $1,658.00 | $1,658.00 | $1,658.00 | $1,658.00 |
| **Simmons** | $808.00 | $808.00 | $808.00 | $808.00 | $808.00 | $808.00 | $808.00 | $808.00 |
| **Unsecured Creditors** | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| **Total** | **$47,018.00** | **$47,018.00** | **$47,018.00** | **$47,018.00** | **$47,018.00** | **$47,018.00** | **$47,018.00** | **$47,018.00** |
| **Net Income** | $1,007.00 | $1,007.00 | $1,007.00 | $1,007.00 | $1,007.00 | $1,007.00 | $1,007.00 | $1,007.00 |

| | 3 | 4 | 5 | 6 | Total |
|---|---|---|---|---|---|
| **INCOME** | | | | | |
| Gross Income | $395,000.00 | $395,000.00 | $395,000.00 | $395,000.00 | $4,740,000.00 |
| Other Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTAL Income** | **$395,000.00** | **$395,000.00** | **$395,000.00** | **$395,000.00** | **$4,740,000.00** |
| **EXPENSES** | | | | | |
| Materials | $78,000.00 | $78,000.00 | $78,000.00 | $78,000.00 | |
| Bank Charges & Fees | $2,300.00 | $2,300.00 | $2,300.00 | $2,300.00 | $27,600.00 |
| Equipment Rental | $7,275.00 | $7,275.00 | $7,275.00 | $7,275.00 | $87,300.00 |
| Insurance | | | | | |
| Liability Insurance | | | | | $0.00 |
| Casualty Insurance | | | | | $0.00 |
| Workers' Comp Insurance | $19,215.00 | $19,215.00 | $19,215.00 | $19,215.00 | $230,580.00 |
| Total Insurance | **$19,215.00** | **$19,215.00** | **$19,215.00** | **$19,215.00** | **$230,580.00** |
| Legal & Professional Services | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $24,000.00 |
| Office Expense | $500.00 | $500.00 | $500.00 | $500.00 | $6,000.00 |
| Office Supplies | $600.00 | $600.00 | $600.00 | $600.00 | $7,200.00 |
| Payroll Expenses | | | | | |
| Payroll Taxes | $15,444.00 | $15,444.00 | $15,444.00 | $15,444.00 | $185,328.00 |
| Wages | $181,996.00 | $181,996.00 | $181,996.00 | $181,996.00 | $2,183,952.00 |
| Total Payroll Expenses | **$197,440.00** | **$197,440.00** | **$197,440.00** | **$197,440.00** | **$2,369,280.00** |
| Postage & Delivery Charges | | | | | $0.00 |
| Property Tax Expense | $1,325.00 | $1,325.00 | $1,325.00 | $1,325.00 | $15,900.00 |
| Rent & Lease | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $120,000.00 |
| Repairs & Maintenance | $7,395.00 | $7,395.00 | $7,395.00 | $7,395.00 | $88,740.00 |
| Security Expense | | | | | $0.00 |
| Telephone Expense | $700.00 | $700.00 | $700.00 | $700.00 | $8,400.00 |
| Toll & Parking | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | |
| Uniform | $225.00 | $225.00 | $225.00 | $225.00 | |
| Utilities | $4,200.00 | $4,200.00 | $4,200.00 | $4,200.00 | $50,400.00 |
| Vehicle Fuel | $10,800.00 | $10,800.00 | $10,800.00 | $10,800.00 | $129,600.00 |
| **TOTAL Expenses** | **$346,975.00** | **$346,975.00** | **$346,975.00** | **$346,975.00** | **$4,163,700.00** |
| Net Income | $48,025.00 | $48,025.00 | $48,025.00 | $48,025.00 | $576,300.00 |
| **PLAN** | | | | | |
| SBA (not modified) | $10,002.00 | $10,002.00 | $10,002.00 | $10,002.00 | $120,024.00 |
| Ally 5769 | $970.00 | $970.00 | $970.00 | $970.00 | $11,640.00 |
| Ally 4892 | $412.00 | $412.00 | $412.00 | $412.00 | $4,944.00 |
| Ally 8959 | $522.00 | $522.00 | $522.00 | $522.00 | $6,264.00 |
| Ally 5717 | $645.00 | $645.00 | $645.00 | $645.00 | $7,740.00 |
| Ally 4857 | $194.00 | $194.00 | $194.00 | $194.00 | $2,328.00 |
| Amur | $2,940.00 | $2,940.00 | $2,940.00 | $2,940.00 | $35,280.00 |
| Blue Bridge 5023 | $768.00 | $768.00 | $768.00 | $768.00 | $9,216.00 |
| Blue Bridge 4469 | $1,145.00 | $1,145.00 | $1,145.00 | $1,145.00 | $13,740.00 |
| Comptroller | $507.00 | $507.00 | $507.00 | $507.00 | $6,084.00 |
| Denton - Ad Valorem | $260.00 | $260.00 | $260.00 | $260.00 | $3,120.00 |
| FMC 0381 | $280.00 | $280.00 | $280.00 | $280.00 | $3,360.00 |
| FMC 3203 | $256.00 | $256.00 | $256.00 | $256.00 | $3,072.00 |
| FMC 2635 | $425.00 | $425.00 | $425.00 | $425.00 | $5,100.00 |
| FMC 5220 | $781.00 | $781.00 | $781.00 | $781.00 | $9,372.00 |
| IPFS | $1,095.00 | $1,095.00 | $1,095.00 | $1,095.00 | $13,140.00 |
| IRS | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $162,000.00 |
| Mitsubishi | $2,450.00 | $2,450.00 | $2,450.00 | $2,450.00 | $29,400.00 |
| Newlane | $805.00 | $805.00 | $805.00 | $805.00 | $9,660.00 |
| PNC 9790 | $184.00 | $184.00 | $184.00 | $184.00 | $2,208.00 |
| PNC 9314 | $1,411.00 | $1,411.00 | $1,411.00 | $1,411.00 | $16,932.00 |
| PNC 0203 | $1,658.00 | $1,658.00 | $1,658.00 | $1,658.00 | $19,896.00 |
| Simmons | $808.00 | $808.00 | $808.00 | $808.00 | $9,696.00 |
| Unsecured Creditors | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $60,000.00 |
| Total | **$47,018.00** | **$47,018.00** | **$47,018.00** | **$47,018.00** | **$564,216.00** |
| Net Income | $1,007.00 | $1,007.00 | $1,007.00 | $1,007.00 | $12,084.00 |